UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **MUTUAL SERVICE CASUALTY** ) | |
| **INSURANCE COMPANY, as** ) | |
| subrogee of Growmark, Inc. ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No. 05-2107 |
| ) | |
| **SKINNER TANK COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

# O R D E R

In May 2005, Plaintiff Mutual Service Casualty Insurance Company, as subrogee of Growmark, Inc., filed a Complaint (#1) against Defendant Skinner Tank Company, alleging breach of contract, negligence, and breach of warranty. Federal jurisdiction is based on diversity pursuant to 28 U.S.C. § 1332. The parties have consented to jurisdiction by a United States Magistrate Judge.

In March 2007, Defendant filed a Motion for Summary Judgment (#14). After reviewing the parties' pleadings, Defendant's memorandum, and the evidence presented, this Court **GRANTS** Defendant's Motion for Summary Judgment **(#14)**.

### I. Standard

A court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material factual dispute exists that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of showing that no such issue of material fact exists. *Celotex,* 477 U.S. at 323.

The Court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). However, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex,* 477 U.S. at 322-23. A scintilla of evidence in support of the nonmovant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of any element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

## II. Background

In 1996, Growmark contracted with Skinner to construct a secondary containment steel tank within an existing aluminum tank. In May 2001, the aluminum tank failed.

Kurt Goebel, an engineer, works for Growmark. He was personally involved in the design of the secondary containment tank project in 1996 and he discussed the design with Kent Brook, an employee of Skinner Tank. (Goebel affidavit, p. 2.)

Kent Brook's degree is in mechanical design engineering technology. Mr. Brook testified that Skinner builds American Petroleum Institute (hereinafter "API") standard 650 field-erected steel storage tanks. (Brook dep., p. 21.) He is familiar with API 650, which constitutes a set of industry-standard recommendations on how to build welded steel storage tanks to store liquids. He worked with Growmark employees throughout the design phase. He discussed the details of the tank project with Growmark employees and developed Skinner's proposal.

Larry Skinner testified regarding the procedure that Skinner Tank follows when it receives an inquiry from a customer (Skinner dep., p. 28) and what happened in the specific case when Growmark contacted Skinner (Skinner dep., p. 65). When Growmark first contacted Skinner about building the tank, Growmark provided some basic information regarding the tank volume and size so that Skinner could develop a proposal. Growmark also provided some drawings. (Skinner dep., pp. 67-69.) Growmark specified that the interior tank would be steel. (Skinner dep., pp. 69-70.) The final proposal included drawings by Kent Brook. (Skinner dep., pp. 78-80.)

Keith Brandau is Defendant's expert witness. He testified that the tank collapsed because galvanic corrosion reduced the mass of the aluminum columns to the extent that they could no longer carry the loads from the roof. (Brandau dep., p. 74; Brandau report, #16-5, p. 39.) Galvanic corrosion occurs when dissimilar metals come into contact thereby creating a situation where one of the metals gives itself up to the other, resulting in physical loss. (Goebel aff., ¶ 6.)

Plaintiff Mutual Service sent Skinner Tank a letter summarizing its conclusions as follows:

> After extensive investigation into the cause of the loss, we have concluded that the collapse resulted from Skinner Tank Company's defective construction of the tank. Our engineering consultants have concluded that the aluminum support beams for the tank structure corroded due to galvanic corrosion . . . . The modifications to the existing tank performed by Skinner resulted in direct contact between the preexisting aluminum support beams and the newly installed steel floor of the new steel tank that Skinner constructed inside the preexisting aluminum structure.

Letter from George Feretti on behalf of Growmark to Skinner Tank Company, #16-5, p. 46. Notwithstanding this correspondence, Plaintiff has not disclosed its "engineering consultants" or other experts to testify regarding the conclusions described above.

In its complaint, Plaintiff alleged breach of contract, negligence (breach of duty of care), and breach of warranty. All claims are based on the premise that Defendant Skinner Tank is responsible for the tank failure. More particularly, the complaint alleged that Skinner failed to

3

properly design, manufacture, inspect, test, and/or install the steel tank within the existing aluminum tank so as to prevent galvanic corrosion between the dissimilar metals or to prevent loss of structural integrity of the tank (breach of contract); and/or Skinner failed to use reasonable care in designing, manufacturing, inspecting, testing, and/or installing the steel tank within the existing aluminum tank so as to prevent galvanic corrosion between the dissimilar metals when it knew or should have known that such corrosion would occur or to prevent loss of structural integrity of the tank or was otherwise negligent in its work on the tank (negligence); and/or Skinner breached express warranties that the work would be completed in a workmanlike manner according to industry standards when it failed to properly design, manufacture, inspect, test, and/or install the steel tank within the existing aluminum tank so as to prevent galvanic corrosion between the dissimilar metals or to prevent loss of structural integrity of the tank or when it was negligent in doing so (breach of warranty).

### III.  Analysis

Defendant argues that it is entitled to judgment as a matter of law because Plaintiff cannot establish the cause of the tank failure that was the basis for the lawsuit; accordingly, there is no evidence that Defendant breached its contract with Growmark, breached its duty of care to Growmark, or breached a warranty.

#### A.  Discovery Issues
#### 1.  Dr. German Gurfinkel

Defendant's motion is premised on Plaintiff's lack of expert testimony regarding the physical cause of the tank failure.  Specifically, Defendant contends that German Gurfinkel's report is the only evidence Plaintiff tendered regarding cause and it is inadmissible as an expert opinion because it was not disclosed as such pursuant to the Federal Rules of Civil Procedure 26(a)(2), and also because the contents of the report itself are unreliable, thus failing to satisfy Federal Rules of Evidence 702.  Alternatively, Defendant contends that Plaintiff's expert witness testimony should be limited to that contained in the Gurfinkel report.

In response to Defendant's arguments regarding the inadmissibility of Dr. Gurfinkel's report, Plaintiff contends that its failure to formally disclose Dr. Gurfinkel's final opinion was inadvertent and harmless.  Plaintiff asks the Court to allow Dr. Gurfinkel to testify as an expert witness and/or to allow him to provide a final report as required by Rule 26(a).

The Court agrees with Defendant that Dr. Gurfinkel's report fails to meet the standards of an opinion as described in Rule 26(a)(2)(B).  As Defendant explained, the report itself indicates that additional facts and data are required and clearly presents only preliminary conclusions.  In addition, Plaintiff failed to adequately disclose Dr. Gurfinkel as an expert witness.  "[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless."  *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998).  Contrary to Plaintiff's argument, Plaintiff has not shown that its failure to comply with Rule 26(a) was either justified or harmless.  Accordingly, the report is not admissible as an expert opinion and Dr. Gurfinkel may not testify as an expert witness at trial.

### 2.  Keith Brandau

Regarding the physical cause of the tank collapse, Plaintiff does not disagree with Defendant's expert, Keith Brandau, who testified that the tank collapsed due to galvanic corrosion.  (Brandau dep., p. 20 ("[Gurfinkel] asked me my opinion of the cause of the collapse, and I told him I thought that galvanic corrosion was a very likely cause."))  Plaintiff stated that it wishes to adopt Brandau's opinion and report.

Defendant contends that Plaintiff may not establish its *prima facie* case based on the testimony or report of Mr. Brandau, an expert disclosed by Defendant.  Rule 26(a)(2)(A) provides that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702 [(expert testimony)], 703 [(bases of opinion testimony by experts)], or 705 [(disclosure of facts or data underlying expert opinion)] of the Federal Rules of Evidence."  Here, should Defendant choose not to call Keith Brandau to testify at trial, Plaintiff may not present him as an expert because Plaintiff did not timely disclose him.

### 3.  Kurt Goebel

Alternatively, Plaintiff argues that Growmark's engineer, Kurt Goebel, may testify that galvanic corrosion caused the tank collapse.  Although Plaintiff never disclosed Mr. Goebel as an expert witness or disclosed Mr. Goebel's opinion, Plaintiff contends that he may testify as a lay witness pursuant to Federal Rules of Civil Procedure 26(a)(2)(B).  The Court agrees that he can testify as to what he observed regarding the appearance of the columns.

In addition, Plaintiff contends that the concept of galvanic corrosion is so well-established that expert testimony is not required to introduce the concept, therefore Mr. Goebel may testify, based on his personal observation and knowledge, that galvanic corrosion caused the tank collapse.  The Court disagrees.

Even if the Court took judicial notice of the concept of galvanic corrosion, it cannot take judicial notice that galvanic corrosion was the physical cause of the tank collapse. If Mr. Goebel were to testify that galvanic corrosion caused the tank collapse, that testimony would not constitute a lay opinion pursuant to Federal Rules of Evidence 701; rather, it constitutes "scientific, technical, or other specialized knowledge" as described in Federal Rules of Evidence 702.  Under those circumstances, Mr. Goebel would be an expert witness under Rule 26(a)(2)(A) and, as such, Plaintiff was obligated to disclose him based on both the Federal Rules of Civil Procedure and the Court's discovery order.  Because Plaintiff did not timely disclose Mr. Goebel as an expert witness, he may not testify in that capacity at trial. FED. R. CIV. P. 37(c).  *See White v. United States*, 148 F.3d 787, 793 (7th Cir. 1998) (stating that failure to disclose expert witnesses in compliance with pretrial orders is sufficient cause for excluding the witness) (citing *Simplex, Inc. v. Diversified Energy Sys., Inc.,* 847 F.2d 1290, 1292 (7th Cir. 1988) (affirming trial court's decision not to permit witnesses to provide expert testimony because they had not been identified as experts in compliance with the pretrial order); and *Miksis v. Howard,* 106 F.3d 754, 760 (7th Cir. 1997) (upholding decision to strike expert witnesses for failure to disclose expert witnesses in accordance with Rule 26(a)(2) of the Federal Rules of Civil Procedure)).

## B. Galvanic Corrosion

With regard to Defendant's argument that Plaintiff cannot provide evidence regarding the cause of the loss, Plaintiff states that summary judgment on that basis would be improper because Plaintiff does not dispute that the tank failed due to galvanic corrosion and loss of mass on the internal columns. The Court has concluded above that Plaintiff has disclosed no experts to testify that the collapse was due to galvanic corrosion. However, the Court will now consider Defendant's broader argument regarding Plaintiff's failure to disclose any expert witnesses.

Plaintiff's breach of contract and breach of warranty claims are both based on breach of contract. Defendant states that to prove a claim for breach of contract, Plaintiff must establish that Defendant performed a wrongful act and a loss or damage resulted from the act. *Jackson v. Hammer*, 653 N.E.2d 809, 813 (Ill. App. Ct. 1995). Similarly, to establish negligence, Defendant states that Plaintiff must prove that Defendant performed a wrongful act and a loss or damage resulted from the act. *Economy Fire & Cas. Co. v. GAB Bus. Servs., Inc.*, 507 N.E.2d 896, 899 (Ill. App. Ct. 1987). Thus, every one of the claims requires Plaintiff to establish a wrongful act by Defendant that led to the tank collapse.

Plaintiff has failed to timely disclose an expert witness to testify that galvanic corrosion caused the tank's collapse. Nevertheless, even assuming that the physical cause of the tank collapse was galvanic corrosion, Plaintiff has not presented any expert testimony that ties Defendant's conduct to the galvanic corrosion nor has Plaintiff presented expert testimony on any other issue.

At a hearing dated June 7, 2007, Plaintiff's counsel clarified that Plaintiff's claims are based on the premise that Defendant's design led to the corrosion and ultimately, to the tank collapse. In addition, Plaintiff claims that Defendant held itself out as an expert in design and construction of API 650 tanks, Defendant failed to design and construct the tank to API 650 standards, and the tank collapsed because it was not designed and constructed to API 650 standards. Both premises require Plaintiff to present expert testimony. To establish the first

premise, Plaintiff must present evidence that establishes that the tank design led to the galvanic corrosion. The second premise requires testimony regarding what design and/or construction element was not consistent with API 650 standards and how that element resulted in galvanic corrosion. In either situation, whether certain design/construction elements or modifications caused galvanic corrosion would require an expert opinion, notwithstanding the fact that the concept of galvanic corrosion may be subject to judicial notice. The fact that the ultimate *physical* cause of the tank collapse is galvanic corrosion does not, by itself, establish a link between Defendant's *conduct* and the tank collapse.

> As the Seventh Circuit recently stated,
>
> > [W]e have consistently held that summary judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir. 2005) (internal citations omitted).

*Steen v. Myers*, No. 06-1771, 2007 WL 1461401, *4 (7th Cir. May 21, 2007). Given the technical nature of the issues involved, Plaintiff cannot establish this causation element without expert testimony. Accordingly, the Court grants Defendant's motion for summary judgment.

### IV. Summary

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment **(#14)**. This case is terminated.

ENTER this 15th day of June, 2007.

                                                   s/ DAVID G. BERNTHAL
                                                   U.S. MAGISTRATE JUDGE